J-S49001-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: Z.F.J., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.L., FATHER | No. 1318 EDA 2019 |

Appeal from the Order Entered April 11, 2019
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0000917-2016

| | |
|---|---|
| IN THE INTEREST OF: Z.F.J., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.L., FATHER | No. 1319 EDA 2019 |

Appeal from the Decree Entered April 11, 2019
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000220-2018

BEFORE: BENDER, P.J.E., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED OCTOBER 25, 2019**

M.L. (Father) appeals from the decree and the order, both dated April 11, 2019, that granted the petitions filed by the Philadelphia Department of Human Services (DHS) to involuntarily terminate Father's parental rights and to change the permanency goal from reunification to adoption for Z.F.J. (Child), born in May of 2014.[1] After review, we affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] This Court consolidated Father's two appeals *sua sponte* in that they involved related parties and issues. *See* Pa.R.A.P. 513.

DHS initially became involved with the family in March of 2016, upon receipt of a General Protective Service (GPS) Report, relating to neglect of Child and her siblings by S.R. (Mother).[2]  Specifically, the court describes the situation at that time, noting that:

> On March 10, 2016, the Department of Human Services (DHS) received a General Protective Services (GPS) Report alleging that Z.F.J. and her siblings were being neglected by their Mother, S.R.; that Mother had been using Percocet that she had obtained without a prescription; that Mother had often been drowsy and had not been attentive to her children's needs; and that Mother had abused and hit her children.  The Report alleged that a sibling, D.R., had not been attending school because Mother failed to transport him to school in the mornings; that D.R., had been diagnosed with Attention Deficit Hyperactivity Disorder (ADHD), had a slight hearing loss, and had been in need of eyeglasses; and that he had not received treatment for his mental health and physical needs.  The Report further alleged that Z.F.J. had been diagnosed with having scabies; that Mother had waited two weeks to take her to the doctor for treatment; and that the doctor had instructed Mother to take all of her children for a scabies examination, but she had not complied with the doctor's recommendation.  The Report alleged that Mother was not employed; that she had a history of anxiety and had been abusing her prescribed Xanax; and that Mother and her paramour, S.J., had a history of domestic violence.  The Report was determined as valid.

Trial Court Opinion (TCO), 6/26/19, at 2-3 (citation to the record omitted).  The trial court's opinion then provides an extensive discussion of the facts relating to the family, centering mostly on Mother's actions and her

_____

[2] Mother's parental rights were also terminated at the same time that Father's rights were terminated.  Mother did not appeal that determination and is not a party to this appeal.

interactions with the children as gleaned from the various GPS Reports. *See id.* at 3-16.

Of note, a genetic test received on May 17, 2017, indicated that S.J., Mother's paramour, was excluded as the biological father of Child. *Id.* at 12. Thereafter, at a status review hearing on April 26, 2018, Father was identified as Child's father, which was confirmed by the results of a paternity test received on June 6, 2018. *Id.* at 14. At that point, the parental objective for Father requested that he sign a voluntary relinquishment of parental rights. He did not comply and following two single case plan (SCP) meetings held on September 13 and December 17, 2018, Father's objective was "to visit [] Child weekly to build a relationship with [] Child." *Id.* at 15.

We next set forth the facts gleaned by the trial court from the termination and goal change hearing involving Child and Father, wherein the court stated:

> A Goal Change, Involuntary Termination Hearing was held on April 11, 2019, before the Honorable Allan L. Tereshko. Assistant City Solicitor, Megan Fitzpatrick, Esquire, for DHS, presented Beverly Leff, CUA[3] Case Manager, Catholic Community Services[,] as the first witness. She testified that a GPS Report on 3/10/2016, was reported to DHS, alleging that Mother was using Percocets, not attending the medical needs of [] Child and [] Child had scabies. [] Child was removed from Mother's care and [] Father was not involved at that time.
>
> Ms. Leff testified that [] Child was placed in Foster Care through Second Chance and that [Child] has a strong bond with her Foster Parents and sees her Foster Parent, [C.G.,] as a father figure. Ms. Leff reported that [Child] has not had any negative behaviors, or

---

[3] Community Umbrella Agency.

- 3 -

reported negative observations since she has last seen her Mother in April of 2018.

Regarding, Father, M.L., Ms. Leff testified that in June 2018, the results of the genetic testing were received and confirmed M.L.[] was the Father of [] Child. She developed a Single Case Plan (SCP) for him to visit [] Child on a weekly basis to facilitate a relationship. [Father] visited [] Child 4 out of 15 times. [Ms. Leff] noted the visits did not go well. [] Child did not make eye contact with her Father, and she would not engage him and did not want to be in the room with him. [] Child would start to cry and the visit was ended. A few times, [Ms. Leff] had to go to the car to try to persuade [] Child to come into the building for a visit. Father finally decided to end the visits and to accept a referral to the Family School. [Ms. Leff] referred him on 11/30/2018, however, Father did not follow through with the referral. She re-referred Father to the Family School on 3/13/2019, however, they have been unsuccessful in contacting him.

DHS attorney Ms. Fitzpatrick asked Ms. Leff why reunification is being ruled out and Ms. Leff testified that [] Child does not have a bond with [Father], and that she does not know him at all. She testified that Father did try to engage with the Child at the visits that he did attend, which is why she then referred him to Family School to help him facilitate that relationship. Ms. Leff opined it would be in [] Child's best interest to be adopted, and [] Child would not suffer irreparable harm if Father's parental rights were terminated. [Ms. Leff] last saw [] Child on 4/09/2019, and she was safe with all her needs being met by the Foster Parent, C.G., and his wife.

On cross-examination by Andre Martino, Esquire, attorney for Father, Ms. Leff testified that [Child] is up to date on routine medical and dental services and that her Foster Parents … are receiving adoptive resources. She testified that [] Child is in daycare and is socializing with other children. Mr. Martino asked [Ms. Leff] why Father did not attend all 15 visits, and Ms. Leff responded that he was not confirming any visits at the start of the visitation order and then the 4 visits that he did attend were the visits that he confirmed prior to attending.

Ms. Leff lastly testified that Paternal Grandmother informed her this morning that Father was incarcerated, however, she could not confirm that allegation was true. She noted that Father had all of

her contact information and her information had not changed, but he did not contact her or anyone else to report that he was incarcerated.

*Id.* at 16-18 (citations to the record omitted).

The trial court concluded that DHS had met its burden of proof that Father's parental rights should be terminated pursuant to 23 Pa.C.S. § 2511(a)(1), (2) and (b) and that Child's goal should be changed to adoption. At the April 11, 2019 hearing, the court explained its reasoning, stating:

> [F]ather arrived late into [C]hild's life, paternity being established as of 6/6/18, and since that time, he has been unable to form a paternal relationship with [C]hild.
>
> He made a halfhearted effort, and then abandoned that effort. He is noncompliant with any of the goals set out for him by the Department. Although the Department went to great lengths to try to encourage [F]ather, he simply failed to follow through on any of the efforts by the Department to create that relationship.

N.T. Hearing, 4/11/19, at 28.

Following the entry of the decree and the order issued in this case, Father filed the appeals now before us and raises six issues for our review.

1. Whether the [t]rial [c]ourt erred by terminating the parental rights of [Father] under 23 Pa.C.S.[] § 2511(a)(1)?

2. Whether the [t]rial [c]ourt erred by terminating the parental rights of [Father] under 23 Pa.C.S.[] § 2511(a)(2)?

3. Whether the [t]rial [c]ourt erred by terminating the parental rights of [Father] under 23 Pa.C.S.[] § 2511(b)?

4. Whether the [t]rial [c]ourt erred by determining it to be in [] [C]hild's best interest to change the goal from reunification to adoption?

5. Whether the [t]rial [c]ourt erred by not appointing legal counsel to represent [] [C]hild's legal interests?

> 6. Whether the [t]rial [c]ourt erred by not granting a
> continuance because [F]ather was recently incarcerated?

Father's brief at 6.

We review an order terminating parental rights in accordance with the following standard:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (quoting *In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005)). Moreover, we have explained that:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (quoting *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)). The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003).

- 6 -

We are guided further by the following: Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511, other citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *R.N.J.*, 985 A.2d at 276.

With regard to Section 2511(b), we direct our analysis to the facts relating to that section. This Court has explained that:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*,

- 7 -

946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

As noted above, the trial court terminated Father's parental rights pursuant to section 2511(a)(1), (2) and (b). We need only agree with the trial court as to any one subsection of section 2511(a), as well as section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we analyze the court's decision to terminate under sections 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ***
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein

which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

We first address whether the trial court abused its discretion by terminating Father's parental rights pursuant to section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted).  "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct.  To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties."  *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

Father's brief contains a discussion of the law referencing the subsections of 2511(a), however, he merely claims that the evidence supporting the termination of his parental rights did not meet the test as outlined above in the *Adoption of M.E.P.* decision.  He also claims that he took steps to remedy the situation by visiting Child, but that because Child "did not feel comfortable with [him] he ended the visits."  Father's brief at 18.

We disagree with Father's assertion. The objective assigned to Father was to attend weekly visits with Child and to develop a relationship with her. However, he only attended four out of fifteen scheduled visits and ended the visits when Child would not engage with him. Additionally, on two separate occasions, Ms. Leff referred Father to Family School to help Father establish a relationship with Child, but he did not follow through with those referrals. As for section 2511(b), Father again sets forth the law that applies to that section, but only asserts that DHS failed to present clear and convincing evidence as required. He then simply states that he "visited the child until the child felt uncomfortable." *Id.* at 19.

We conclude that Father is not entitled to relief. Rather, we agree with the trial court's conclusion that termination of Father's parental rights was appropriate pursuant to 23 Pa.C.S. § 2511(a)(2) and (b). The court explained, stating:

> The evidence here is clear and convincing that DHS and the placement Agency made all reasonable efforts to assist Father in obtaining the services necessary to facilitate reunification with his Child. It was imperative for Father to cooperate with the services offered by DHS, however he did not. Father failed in his duty to make diligent efforts and actively participate in those services offered to him. This [c]ourt found that DHS proved by clear and convincing evidence that Father failed to work towards reunification with [] Child, and Father is unable and unwilling to create a stable environment for [] Child. His lack of action demonstrates his inability to care for [] Child now and in the future.
>
> The [c]ourt found [] Child has a right to have proper parenting and fulfillment of her potential in a permanent, healthy, and safe environment. She has a present and future need for essential

- 10 -

parental care[,] which is necessary for her physical and mental wellbeing. Father's behavior has shown an incapacity, neglect or refusal to perform his parental duties. He has shown an incapacity to provide safety and permanency for this Child, and this [c]ourt is not persuaded that Father can or will remedy the conditions which continue to exist and which brought [] Child into supervision.

Testimony by Ms. Leff, the Case Manager, provided credible, persuasive testimony regarding [] Child's physical and emotional needs, best interests and with whom the Child has a parental bond. She noted [] Child has been in care with the Foster Parent since February of 2018, and [] Child has a strong parental bond with her Foster Parent. She has observed [] Child in the Foster home and notes that the Foster Parents provide [] Child with safety and permanency. Father, on the other hand, has no parental bond with [] Child.

Here, the totality of the evidence supports the [c]ourt's conclusion that termination of Father's parental rights is in the best interest of [] Child. This [c]ourt found that termination of Father's parental rights met the developmental, physical and emotional needs and welfare of [] Child, and the statutory requirements for involuntary termination of his parental rights were met pursuant to 23 Pa.C.S.[] § 2511(b).

TCO at 26.

Next, we turn to Father's fourth issue concerning the trial court's decision to change the goal for Child to adoption. This Court's standard of review involving a goal change for a dependent child is as follows:

In cases involving a court's order changing the placement goal … to adoption, our standard of review is abuse of discretion. *In re N.C.*, 909 A.2d 818, 822 (Pa. Super. 2006). To hold that the trial court abused its discretion, we must determine its judgment was "manifestly unreasonable," that the court disregarded the law, or that its action was "a result of partiality, prejudice, bias or ill will." *Id.* (quoting *In re G.P.-R.,* 851 A.2d 967, 973 (Pa. Super. 2004)). While this Court is bound by the facts determined in the trial court, we are not tied to the court's inferences, deductions and conclusions; we have a "responsibility to ensure that the record represents a comprehensive inquiry and

that the hearing judge has applied the appropriate legal principles to that record." ***In re A.K.***, 906 A.2d 596, 599 (Pa. Super. 2006). Therefore, our scope of review is broad. ***Id.***

***In re S.B.***, 943 A.2d 973, 977 (Pa. Super. 2008).

Pursuant to the Juvenile Act, 42 Pa.C.S. § 6351(f), when considering a petition for goal change for a dependent child, the juvenile court is to consider, *inter alia*: (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the child; and (5) a likely date by which the goal for the child might be achieved. ***In re S.B.***, 943 A.2d at 977. The best interests of the child, and not the interests of the parent, must guide the trial court. ***Id.*** at 978.

Again, in his brief, Father sets forth the law that governs a goal change, however, he only asserts that the court erred by determining that it was in Child's best interest to change the goal from reunification to adoption. To support this contention, he states that he "did visit the child and when the child felt uncomfortable he ended the visit." Father's brief at 20. This one-sentence argument does not convince this Court that the trial court erred by changing Child's goal from reunification to adoption. The trial court was free to accept Ms. Leff's opinion "that reunification with Father was not appropriate because [] Child does not have a bond with Father and does not know him at

all." TCO at 28. Father is not entitled to any relief as to the change of goal to adoption.

Father next argues that the trial court erred by not appointing counsel to represent Child's legal interests. Specifically, he relies on *In re T.S.*, 192 A.3d 1080 (Pa. 2018), wherein the court was not required to appoint legal counsel for the two children, ages 2 and 3 years old at the time they were subject to a contested termination of parental rights proceedings, because they were very young and pre-verbal. Here, Father contends that because Child in the instant matter was 4 years old at the time of the hearing and had the ability to communicate, she had the right to have her legal interests represented by counsel. Thus, Father claims that because the court failed to make that appointment Child's rights were not satisfied.

In its response to Father's contention that Child was entitled to separate legal counsel, DHS counters with reliance on *In re G.M.S.*, 193 A.3d 395 (Pa. Super. 2018), stating that "so long as a GAL is an attorney and the child's legal and best interests do not appear to conflict, a court is not required to appoint a separate attorney to represent a child's legal interests." DHS's brief at 24.

To address this issue, we begin by quoting the pertinent portion of the Adoption Act, which requires that children receive counsel in all contested involuntarily termination proceedings.

> **Child.--**The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may

- 13 -

appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a).

The term "counsel" in section 2313(a) refers to an attorney directed by the child who represents his or her legal interests. *In re Adoption of L.B.M.*, 161 A.3d 172, 180 (Pa. 2017). As our Supreme Court has explained, a child's legal interests are distinct from his or her best interests. *Id.* at 174. A child's legal interests are synonymous with his or her preferred outcome, while the orphans' court must determine a child's best interests. *Id.* Our Supreme Court has explained that a single attorney may represent both a child's best interests as his or her guardian *ad litem* and that child's legal interests as counsel pursuant to section 2313(a), but only if no conflict exists between the two sets of interests. *In re T.S.*, 192 A.3d at 1088. Thus, in the *G.M.S.* decision, this Court concluded that the trial court "was not required to appoint a separate attorney to represent [c]hildren's legal interests, so long as [c]hildren's GAL was an attorney, and so long as [c]hildren's legal and best interests did not appear in conflict." *G.M.S.*, 193 A.3d at 400.

That is clearly the situation in the instant case before us. The trial court noted that Maureen Pie, Esq., as the Child Advocate "zealously represented both []Child's legal and best interests[]" and that "[t]hose interests were not in conflict." TCO at 30. Specifically, the court "found no evidence that [] Child could have formed a meaningful attachment to Father based on Father's four

- 14 -

visits with Child and his refusal to attend the Family School referral." ***Id.*** We agree and conclude that this issue does not afford Father any relief.

Father's last issue concerns his contention that the court erred by refusing to continue the hearing and that he was therefore denied due process in that he did not have "his opportunity to be heard by giving testimony, rebutting any unfavorable evidence and introducing evidence at [the] termination hearing." Father's brief at 22. He acknowledges that he was incarcerated and that the trial court, the CUA, and his counsel were only informed of that fact on the morning of the hearing.

"Due process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter." ***In the Interest of A.N.P.***, 155 A.3d 55, 66 (Pa. Super. 2017) (quoting ***In re J.N.F.***, 887 A.2d 775, 781 (Pa. Super. 2005)).

> It is well settled that termination of parental rights implicates a parent's Fourteenth Amendment right to due process. An individual whose parental rights are to be terminated must be given due process of law, as the termination of parental rights is a constitutionally-protected action. DHS bears the burden to prove proper service by its affirmative act.

***Id.*** (citations omitted). Moreover, "[s]ection 2513 of the Adoption Act provides that at least ten days' notice shall be given to the parents, by personal service or registered mail, to their last known address, or by such other means as the court may require" ***Id.***

In its opinion, the court explains its reasons for refusing to grant Father a continuance, stating:

Father argues that he was denied due process, was denied the opportunity to participate in the hearing and denied the opportunity to testify and provide evidence. This broad assertion does not state the basis of the denial of his due process, and this [c]ourt cannot speculate what Father's allegations are. This [c]ourt disagrees with Father's allegation and reasoned that he was notified and served with the Termination Petition, attended the previous hearing and was never denied the opportunity to participate, testify, and present evidence on his own behalf.

The [c]ourt heard evidence from DHS that Father was served with the Amended Termination Petition when he attended the previous [c]ourt date on March 12, 2019. Father's attorney requested a continuance from the [c]ourt on the morning of the hearing based on hearsay information given by Paternal Grandmother stating that Father was incarcerated. However, neither Paternal Grandmother nor counsel provided any corroborating evidence to confirm that allegation. [] Child has been in placement since September of 2016, and further delay of proceedings would not be in the best interests of this Child. She cannot continue to wait for Father to get his life in order and wait for him to willingly seek the tools to be a stable parent and to provide her with the safety and permanency she requires. Therefore, this [c]ourt did not grant a continuance.

TCO at 29-30.

Again, we must conclude that Father has not convinced this Court that the trial court erred in refusing to grant a continuance. Moreover, we note that Father's attorney was present at the termination/goal change hearing and participated on Father's behalf by cross-examining DHS's witness, Ms. Leff. However, because Father's attorney chose not to present any witnesses or any evidence does not equate with a violation of Father's due process rights.

- 16 -

For all the reasons stated above, we affirm the decree terminating Father's parental rights and the order changing the goal for Child to adoption.

Decree and Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/25/19